UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       Case No. 18-20719-9

v.                                         Honorable Thomas L. Ludington

THOMAS JAMAR MCKINLEY,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

On July 17, 2019, Defendant Thomas Jamar McKinley pled guilty to one count of conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). ECF No. 168. He was sentenced to 80 months imprisonment. ECF No. 263. Defendant is currently housed at Federal Correctional Institute, Elkton ("FCI Elkton") near Elkton, Ohio.

On May 28, 2020, Defendant filed a *pro se* motion for compassionate release based on the spread of COVID-19, but, due to mailing delays, the motion was not docketed until June 23. ECF No. 381. On July 20, 2020, Defendant moved to withdraw the motion because he had not included evidence of exhaustion. ECF No. 403. Accordingly, Defendant's Motion for Compassionate Release was dismissed without prejudice on August 28, 2020. ECF No. 409. On September 10, 2020, Defendant renewed his *pro se* Motion for Compassionate Release, which now includes evidence of exhaustion. ECF No. 418. Timely response and reply briefs were filed. ECF Nos. 420, 427.

Defendant alleged that the Bureau of Prisons ("BOP") had previously approved him for home confinement in June 2020 but that his transfer was inexplicably cancelled. ECF No. 418 at

PageID.1962. The Government was directed to file supplemental briefing responding to this allegation. ECF No. 438.

On November 30, 2020, the Government filed a supplemental brief explaining that Defendant had been considered for home confinement pursuant to an injunction entered in *Wilson v. Williams*, No. 4:20-CV-00794 (N.D. Ohio), a class action seeking habeas relief for prisoners housed at FCI Elkton based on the novel coronavirus ("COVID-19") pandemic. ECF No. 443 at PageID.2157. The Government explained that "[t]he BOP ultimately determined that McKinley did not qualify for home confinement under the CARES act based on his medium risk of recidivism, low percentage of term served, and because he also has an incident of violence in his criminal history." *Id.* (internal citations omitted). The Sixth Circuit later vacated the injunction at issue, finding that "the district court erred in holding that petitioners had demonstrated a likelihood of success on their Eighth Amendment claim." *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020).

Defendant's Motion for Compassionate Release remains pending. For reasons discussed below, the Motion will be denied.

**I.**

The United States is facing an unprecedented challenge with the COVID-19 pandemic.

> The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death.

*Wilson*, 961 F.3d at 833. In light of the threat posed by COVID-19, Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)—a form of relief often referred to as "compassionate release." Section 3582(c)(1)(A) provides,

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). Accordingly, the threshold question is exhaustion. If exhaustion is found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the BOP] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at *9.

### A.

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the BOP or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the

>prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). On May 29, 2020, Defendant sent a written request for compassionate release to the warden at FCI Elkton, citing the COVID-19 pandemic and his health condition ECF No. 418 at PageID.1978. At least 30 days have passed since Defendant sent his request. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

**B.**

The next issue is whether sentence reduction is warranted by "extraordinary and compelling reasons." Because Defendant moves for compassionate release on his own behalf, § 1B1.13 is "inapplicable," and [u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Jones*, 980 F.3d at 1109. Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Despite the lack of express guidance, *Jones* suggests that an inmate may have an extraordinary and compelling reason for release where he suffers from a medical condition identified as a risk factor for COVID-19. *See id.* at *2 n.6 (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it). Courts considering the issue post-*Jones* have agreed. *See*, *e.g.*,

*United States v. Rucker*, No. 17-20716, 2020 WL 7240900, at *2 (E.D. Mich. Dec. 9, 2020) (HIV and asthma) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *3 (E.D. Mich. Dec. 9, 2020) (BMI of 45.9) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. Crowe*, No. CR 11-20481, 2020 WL 7185648, at *3 (E.D. Mich. Dec. 7, 2020) (latent tuberculosis, hyperlipidemia, obesity).

More recently, the Sixth Circuit affirmed the denial of compassionate release based on a two-part test for extraordinary and compelling reasons. *See United States v. Elias*, No. 20-3654, 2021 WL 50169, at *3 (6th Cir. Jan. 6, 2021). Under the two-part test in *Elias*, the risk of contracting COVID-19 constitutes an extraordinary and compelling reason "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak."[1] *Id.* (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020)). The Sixth Circuit also held that the district court, in evaluating the movant's medical conditions, "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Id.* at *4.

Defendant, a 46-year-old male, suffers from hypertension, obesity, and an abdominal hernia. ECF No. 418 at PageID.1958, 1973–76. Defendant's most recent BMI was 42.6, making him "severely obese" according to the CDC and therefore at an increased risk of developing complications from COVID-19. *See People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/G4XH-RU7G] (last visited Jan. 15, 2021). Similarly, Defendant's hypertension "might" put him at an increased risk for serious COVID-19

---

[1] Consistent with *Jones*, the court emphasized that district courts need not apply this definition but that it is within their discretion to do so. *Elias*, 2021 WL 50169, at *4 n.1.

complications. *Id.* There is no indication that Defendant's hernia is relevant for COVID-19 purposes.

Moreover, FCI Elkton is still undergoing a COVID-19 outbreak, with five inmates and 29 staff reporting active infections. *See COVID-19*, BOP, https://www.bop.gov/coronavirus/ [https://perma.cc/TU35-TXJM] (last visited Jan. 15, 2021). While the situation at FCI Elkton has improved substantially,[2] Defendant's concern for COVID-19 is not without support. *Id.* The Government does not respond to the specific conditions at FCI Elkton but instead relies on the general efforts of the BOP to contain the virus. *See* ECF No. 420 at PageID.2031–36.

Accordingly, based on Defendant's underlying medical conditions and the ongoing outbreak at FCI Elkton, Defendant has demonstrated an extraordinary and compelling reason for release.

## C.

As stated previously, there is no "applicable policy statement" in this case because Defendant, not the BOP, has moved for compassionate release. Consequently, step two of the § 3582(c)(1)(A) analysis is skipped, and the final issue is whether a sentence reduction is warranted by the applicable factors set forth in § 3553(a). *See Jones*, 980 F.3d at 1108. The factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

---

[2] At least 868 inmates at FCI Elkton have contracted and recovered from COVID-19 since the pandemic began. *See COVID-19*, *supra*.

> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). "District judges maintain an 'obligation to provide reasons' in both sentencing-modification decisions, and traditional sentencing decisions." *Jones*, 980 F.3d at 1112.

> District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision. But as long as the record as a whole demonstrate that the pertinent factors were taken into account by the district court, a district judge need not specifically articulate its analysis of every single § 3553(a) factor.

*Id.* at *11 (internal quotations and citations omitted). Here, the two most pertinent factors are the "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed." 18 U.S.C. §§ 3553(a)(1)–(2). In this case, both factors weigh heavily against a sentence reduction.

First, Defendant has a lengthy and alarming criminal history. Before being convicted of the underlying offense in 2019, Defendant had already accumulated 18 convictions, including assault and battery (1992), domestic violence (1997, 1999), felon in possession of a firearm (2011), and multiple drug offenses involving cocaine and heroin (1994, 2000, 2017). According to the Presentence Investigation Report ("PSR"), Defendant began conspiring with others in 2017 to distribute large quantities of cocaine throughout Michigan. In 2018, police executed a search

warrant at Defendant's residence and discovered over an ounce of cocaine. Defendant eventually pled guilty to the underlying offense: conspiracy to possess with intent to distribute and to distribute cocaine. ECF No. 168.

Defendant's PSR also reveals a long history of substance abuse, beginning when he was only 15. During the presentence interview, Defendant indicated that it was important for him to receive substance treatment while in custody. Defendant's BOP records indicate that he began drug treatment in January 2020 but has not completed programming. *See* ECF No. 453 at PageID.2216. Additionally, Defendant's BOP PATTERN score indicates that he is a moderate risk for recidivism. *See* ECF No. 443-2. With respect to time-served, Defendant has served only a fraction of his 80-month sentence and will not be eligible for transfer to home confinement until 2024. ECF No. 443-3 at PageID.2162.

Given Defendant's considerable criminal history, relatively short time-served, and need for continued correctional treatment, a sentence reduction is not warranted under the § 3553 factors. Defendant's good institutional conduct and participation in correctional programming, while commendable, is ultimately outweighed by the considerations discussed above. *See, e.g.*, ECF No. 418 at PageID.1970 (discussing Defendant's participation in educational programming). Defendant's Motion for Compassionate Release will be denied.

## II.

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 418, is **DENIED**.

Dated: January 22, 2021                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

- 9 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Thomas Jamar McKinley** # 57029-039, ELKTON FEDERAL CORRECTIONAL INSTITUTION (FSL), Inmate Mail/Parcels, P.O. BOX 10, LISBON, OH 44432 by first class U.S. mail on January 22, 2021.

                                                      s/Kelly Winslow
                                                      KELLY WINSLOW, Case Manager